UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO._____

THE AFFILIATI NETWORK, INC.,

    Plaintiff,

vs.

X REV MEDIA, LLC,

    Defendant.
_____/

## COMPLAINT

Plaintiff, The Affiliati Network, Inc., sues Defendant, X Rev Media, LLC, and alleges:

## PARTIES

1. Plaintiff, The Affiliati Network, Inc. ("AFI") is a corporation duly organized under the laws of the State of Florida, which has its principal place of business in Miami, Florida. AFI is an Internet affiliate network engaged in the business of affiliate marketing that produces advertisements for clients through AFI's affiliates' and publishers' websites, search-engines, social media sites, and direct e-mailing distributions.

2. Defendant, X Rev Media, LLC ("XRev") is a corporation organized under the laws of the State of Georgia, which has its principal place of business in Atlanta, Georgia. XRev, like AFI, is an Internet affiliate network that is engaged in the business of affiliate marketing. However, at all times material to this action, XRev sought the marketing and advertising services of AFI to generate and drive sales for a weight loss product trial called

Garcinia X Slim and, as a result, regularly transacted business in Miami, Florida in connection with the agreement and services performed by AFI which are the subject of this litigation.

## JURISDICTON AND VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because: (a) the amount in controversy exceeds $75,000.00, exclusive of interest and costs; and (b) there is diversity of citizenship between the parties as Plaintiff, AFI is a citizen of the State of Florida, and Defendant, XRev is a citizen of the State of Georgia.

4. Venue is proper under 28 U.S.C. § 1391(b) in this judicial district because it is where a substantial part of the events or omissions giving rise to the claims occurred, and because it is where the Defendant, XRev is subject to the Court's personal jurisdiction as set forth herein.

5. Defendant, XRev is subject to personal jurisdiction in this judicial district because: (a) pursuant to Florida's Long-Arm Statute, Section 48.193(g), Florida Statutes, Defendant breached the parties' agreement in Florida by failing to perform acts required by the agreement to be performed in Florida; and (b) Defendant, XRev had minimum contacts with Florida so that the Court's exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.

6. Defendant, XRev purposefully availed itself of the forum because, among other things: (a) XRev initiated and maintained an ongoing business relationship with AFI by regularly sending communications, data, and information to AFI for the purpose of having AFI perform affiliate marketing and advertising services from Miami, Florida, which are the subject of this litigation; (b) the agreement that is the subject of this litigation was negotiated in Florida and became effective when the terms of the agreement were accepted and performed in Miami,

Florida; and (c) XRev regularly submitted payments to AFI in Miami, Florida under the parties' agreement for the services AFI performed on its behalf in Miami, Florida, which are the subject of this litigation.

**STATEMENT OF FACTS**

7.    AFI is a web-based affiliate marketing company based in Miami, Florida that provides a network of publishers and affiliates to its clients allowing them the ability to create and publish successful advertising campaigns through their network to drive sales from online traffic and leads.  Essentially, AFI is paid commissions for lead generation for its advertising clients, while AFI is obligated to pay its affiliates on either a weekly or daily basis.

8.    Beginning in approximately January through September 2013, AFI and XRev first established a business relationship whereby AFI provided XRev with various affiliate marketing services, which included running six different advertising campaigns for XRev.

9.    During such time, XRev paid AFI in Miami, Florida, on eight different occasions for the affiliate marketing services AFI provided, but the parties did not have a formal written agreement during that relationship and negotiated terms verbally or via text messages for AFI.

10.    Subsequently, on February 20, 2014, the parties communicated via telephone and Skype[1] messaging to discuss and negotiate a new marketing campaign for XRev's weight loss product called *Garcinia X Slim Trial* ("X Slim"), which XRev desired to market and sell to prospective online customers through AFI's affiliate network.

11.    At that time, and through a series of verbal communications, emails, texts, and Skype[1] messages over the life of the parties' relationship and marketing campaign, the parties

---

[1] Skype is a voice-over IP service developed by Microsoft allowing individuals to communicate via online telephone calls, video conferencing, and text messaging.

3

agreed to certain terms that would govern the X Slim marketing campaign and the parties' relationship (the "Agreement"), which included the following:

- (a) With the assistance of XRev, AFI would generate the necessary advertisements and creatives to be utilized by AFI's affiliates for the X Slim marketing campaign;
- (b) AFI would be paid a $45.00 commission by XRev for each customer's registration and credit card purchase of the first X Slim product;
- (c) AFI would be paid an additional $42.00 by XRev for each customer's registration and credit card purchase of a second X Slim product;
- (d) Once a purchase is complete from an advertisement, a pixel will fire to record and register each completed sale, which will be maintained by each of the parties' tracking platform called Cake, a tracking and analytics platform;
- (e) For sales that are not captured as completed sales on Cake, sales were tracked on XRev's backend customer relations management ("CRM") system.  XRev is required to report the total units sold to AFI from the CRM and reconcile such units so that AFI may be paid for any untracked leads;
- (f) There was no initial limit on leads provided by AFI but XRev may cancel or adjust the leads at anytime, if necessary; and
- (g) XRev was obligated to pay AFI, which maintains its principal place of business in Miami, Florida, on a daily basis by wire transfer within five (5) days of its receipt of the traffic and leads, otherwise known as "net 5 payment" terms.

12. Consequently, on February 21, 2014, AFI began generating leads and traffic on behalf of XRev, which continued until March 19, 2014 resulting in a total of approximately 7,206 leads that were tracked.  Also, XRev intermittently asked AFI to temporarily pause traffic and leads so that XRev could catch up with its sales and shipping demands to its customers.

13. Once the campaign was underway, XRev submitted a total of ten payments to AFI for AFI's X Slim advertising services between February 27, 2014 and April 17, 2014, of which daily payments were submitted on March 2, March 11-14, and March 18, 2014.

14. Since XRev was satisfied with the quality of the traffic and it regularly verified retention rates on sales from AFI's leads, XRev often requested that AFI continue generating leads and increase the amount of traffic.

15. Moreover, AFI periodically issued invoices for the marketing and advertising services ordered by XRev to reflect the amounts due and previous payments or adjustments made on the account.

16. Ultimately, due to an ever-increasing balance resulting from leads and sales provided to XRev that had reached $293,162.00, on March 19, 2014 AFI was forced to inactivate XRev's campaign and cease its marketing services. A true and accurate copy of AFI's March 31, 2014 invoice is attached hereto as *Exhibit A*, and incorporated herein by reference.

17. Subsequently, on April 4, 2014, XRev's principals promised by Skype messaging that its bank would be releasing payment for AFI's balance due, apologized for the delay, and claimed that it had issues with the bank that delayed payment. Then, consistent with XRev's various promises to satisfy the outstanding balance, on April 16 and April 17, 2014 XRev made two final and partial payments to AFI in the amounts of $8,000.00 and $12,000.00 respectively.

18. However, after applying the two payments, a balance of $273,162.00 now remains due and owing. In fact, upon information and belief, XRev's CRM captured more leads and sales than what was tracked and, as a result, XRev likely owes AFI more than $273,162.00 but XRev has wrongfully refused to provide AFI with its CRM data.

19. Aside from XRev's various expressions that XRev was content with the quality of the leads and the three "soft pause" requests due to XRev's inability to handle the volume of leads generated by AFI, at no time did XRev terminate the affiliate marketing services that give rise to the balance due to AFI.

20. Instead, XRev profited greatly from the X Slim sales derived from the 7,206 leads AFI generated, while at the same unremittingly promising payment to AFI on various occasions so that AFI would continue to generate more traffic for XRev.

21. Then, much to AFI's surprise, on May 6, 2014 XRev served AFI with a letter unreasonably disputing the quality of the traffic, claiming excessive chargebacks/returns, seeking refunds for $214,589.00 in commissions it had already paid, and claiming that AFI owed XRev an additional $789,860.20 in damages.

22. As a result, by letter dated May 30, 2014 (the "Demand Letter"), AFI made a final demand that the Defendant XRev submit payment for the remaining balance due of $273,162.00, and included an updated invoice.  A true and accurate copy of the Demand Letter is attached hereto as *Exhibit B* and incorporated herein by reference.

23. However, despite demands and XRev's promises to pay the balance due, XRev has failed to pay the outstanding balance due.

## COUNT I - BREACH OF CONTRACT

24. Plaintiff, AFI incorporates and re-alleges paragraphs 1 through 23 hereinabove as if fully set forth herein.

25. Plaintiff AFI complied with its contractual obligations under the parties' verbal and written agreement formed during the relationship by, among other things, performing the

affiliate marketing and effective advertisement services that generated numerous valid and valuable leads for Defendant, XRev.

26. Defendant XRev is in default of its obligations under the parties' agreement by failing to timely submit payment for AFI's advertising services and failing to provide the necessary CRM data so that AFI may accurately bill XRev for the services provided.

27. AFI has been damaged by XRev's breach of the parties' Agreement.

WHEREFORE, Plaintiff, AFI demands judgment against Defendant XRev in the amount of $273,162.00, plus prejudgment interest and costs incurred in connection with this action, and such other and further relief as this Court considers appropriate.

## COUNT II- OPEN ACCOUNT

28. Plaintiff, AFI incorporates and re-alleges paragraphs 1 through 10, and 12 through 23, hereinabove as if fully set forth herein.

29. This count is pled in the alternative to Count I for Breach of Contract.

30. Defendant, XRev owes AFI $273,162.00 that is currently due and outstanding for goods and services sold and delivered by AFI to XRev between February 21, 2014 and March 19, 2014, as reflected in the account in *Exhibit A*.

WHEREFORE, Plaintiff, AFI demands judgment against Defendant XRev in the amount of $273,162.00, plus prejudgment interest and costs incurred in connection with this action, and such other and further relief as this Court considers appropriate.

## COUNT III- UNJUST ENRICHMENT

31. Plaintiff, AFI incorporates and re-alleges paragraphs 1 through 10, and 12 through 23, hereinabove as if fully set forth herein.

32. This count is pled in the alternative to Count I for Breach of Contract.

33. As a result of the business transactions and services provided by Plaintiff, AFI from February 21, 2014 through March 19, 2014, AFI has conferred a benefit on Defendant, XRev, which has knowledge thereof.

34. XRev voluntarily accepted and retained the benefit conferred.

35. XRev owes AFI $273,162.00 that is due for the affiliate marketing services provided by AFI.

36. The circumstances render the XRev's retention of the benefit inequitable unless the XRev pays AFI the value of the benefit received for the services provided to XRev.

WHEREFORE, Plaintiff, AFI demands judgment against Defendant XRev in the amount of $273,162.00, plus prejudgment interest and costs incurred in connection with this action, and such other and further relief as this Court considers appropriate.

Dated: June 10, 2014

Respectfully submitted,

/s/ *Ruben E. Socarras*
Ruben E. Socarras
Fla. Bar No. 712256
rsocarras@msglaw.com
Robert C. Streit
rstreit@msglaw.com
Fla. Bar No. 70780
MARSHALL SOCARRAS GRANT, P.L.
197 South Federal Highway, Suite 300
Boca Raton, Florida 33432
Telephone 561.361.1000
Facsimile 561.672.7581

*Counsel for Plaintiff, The Affiliati Network, Inc.*